1  H. LOUIS SIRKIN (*pro hac vice*)
   *hls@santen-hughes.com*
2  BRIAN P. O'CONNOR (*pro hac vice*)
   *bpo@santen-hughes.com*
3  SANTEN & HUGHES, LPA
   600 Vine Street, Suite 2700, Cincinnati, Ohio  45202
4  Telephone: (513) 721-4450, Facsimile: (513) 721-0109

5  D. GILL SPERLEIN (SBN 172887)
   *gill@sperleinlaw.com*
6  THE LAW OFFICES OF D. GILL SPERLEIN
   345 Grove Street, San Francisco, California 94102
7  Telephone: (415) 404-6615, Facsimile (415) 404-6616

8  Attorneys for Plaintiffs EROTIC SERVICE PROVIDERS
   LEGAL, EDUCATION & RESEARCH PROJECT; K.L.E.S.;
9  C.V.; J.B.; AND JOHN DOE

10

11            **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
12                        **OAKLAND DIVISION**

13

14  EROTIC SERVICE PROVIDERS LEGAL,          )  Case No.:  4:15-CV-01007 JSW
    EDUCATION & RESEARCH PROJECT,            )
15  K.L.E.S..; C.V.; J.B..; AND JOHN DOE,     )
                                             )  **PLAINTIFFS' OPPOSITION TO**
16            Plaintiffs,                     )  **THE ATTORNEY GENERAL'S**
                                             )  **MOTION TO DISMISS**
17        vs.                                )
                                             )
18  GEORGE GASCÓN, in his official capacity as )
    District Attorney of the City and County of San )
19  Francisco; EDWARD S. BERBERIAN, JR., in   )  Hearing Date:   August 7, 2015
    his official capacity as District Attorney of the )  Time:           9:00 a.m.
20  County of Marin; NANCY E. O'MALLEY, in her )  Dept:           5, 2d Floor
    official capacity as District Attorney of the )  Judge:          Hon. Jeffrey S. White
21  County of Almeda; JILL RAVITCH, in her    )  Trial Date:     Not set
    official capacity as District Attorney of the )  Action Filed:   March 4, 2015
22  County of Sonoma; and KAMALA D. HARRIS,   )
    in her official capacity as Attorney General of the )
23  State of California,                      )
                                             )
24  _____ Defendants      )

25

26

27

28                                           OPPOSITION TO MOTION TO DISMISS
                                             Case No.: 4:15-CV-01007 JSW

1

# TABLE OF CONTENTS

2

**Pages**

3  TABLE OF CONTENTS ................................................................................................... i

4  TABLE OF AUTHORITIES......................................................................................ii-iv

5  OPPOSITION ...............................................................................................................1

6  I.     Under the Due Process Clause of the Fourteenth Amendment and
       *Lawrence v. Texas*, the State cannot criminalize consensual, adult, sexual
7      activity that occurs in private, even if it occurs for compensation ...........................2

8  II.    The State incorrectly claims that this is a case about commerce and not
       about a person's fundamental liberty interest in deciding how to conduct
9      his or her private life in matters pertaining to sex ...................................................6

10         A.     Recent Second Amendment cases demonstrate that individuals have
              a right to engage in commerce to exercise their constitutional rights ..........7
11
           B.     Cases concerning the right to privacy also show that individuals have
12             a right to engage in commerce to exercise their constitutional rights ..........8

13 III.   *Glucksberg, Raich, and IDK*, cited by the State, do not control this case...............9

14 IV.    The interests that the State claims Section 647(b) advances do not warrant
       the outright prohibition of consensual, adult, sexual activity that occurs in
15     private, even if it occurs for compensation................................................................11

16 V.     Plaintiffs' free speech claim is not subject to dismissal ............................................13

17 VI.    Plaintiffs' freedom of association claim is not subject to dismissal........................14

18 VII.   The Plaintiffs have a protectable property interest in their desired profession
       and a substantive due process right to engage in it. ..................................................15
19
20 VIII.  Plaintiffs' claims under the California Constitution.................................................15

21 IX.    Plaintiffs' as-applied challenge does not fail. ...........................................................15

22 XI.    Conclusion..................................................................................................................16

23

24

25

26

27

28

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

# TABLE OF AUTHORITIES

**CASES**                                                                                             **Pages**

*Allgeyer v. Louisiana,*
  165 U.S. 578, 589 (1897) ................................................................................15

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F.3d 912, 925 (9th Cir. 2001) ................................................................12

*Bailey v. U.S.,*
  98 F.2d 306, 308 (D.C. Cir. 1938) ................................................................13

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte,*
  481 U.S. 537, 545 (1987) ................................................................................14

*Bowers v. Hardwick,*
  478 U.S. 186 (1986) ................................................................................*passim*

*Buckley v. Valeo,*
  424 U.S. 1, 17 96 S., Ct. 612 (1976) ................................................................7

*Carey v. Population Services Int'l,*
  431 U.S. 678 (1971) ................................................................................*passim*

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York,*
  447 U.S. 557, 563 (1980) ................................................................................13

*Coyote Publishing, Inc. v. Miller,*
  598 F.3d 592, 605 (9th Cir. 2010) ................................................................13

*Doe v. Bolton,*
  410 U.S. 179, 188 (1973) ................................................................................16

*Eisenstadt v. Baird,*
  405 U.S. 438 (1972) ................................................................................4,9

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC,*
  666 F.3d 1216, 1220-21 (9th Cir. 2012) ................................................14

*Griswold v. Connecticut,*
  381 U.S. 479 (1965) ................................................................................4,9

*Heffron v. Int'l Society for Krishna Consciousness, Inc.,*
  452 U.S. 640, 647 (1981) ................................................................................6

*IDK, Inc. v. County of Clark,*
  836 F.2d 1185 (9th Cir. 1988) ................................................................9,11

*Illinois Ass'n of Firearms Retailers v. City of Chicago,*
  961 F.Supp. 2d 928, 936-8 (N.D. Ill. 2014) ................................................6,7

ii

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

*Kampfer v. Cuomo,*
   993 F.Supp. 2d 188, 195 (N.D. N.Y. 2014) .................................................. 7

*Latta v. Otter,*
   771 F.3d 456, 479 (9th Cir. 2014) ............................................................ 5

*Lawrence v. Texas,*
   539 U.S. 558, 562 (2003) ................................................................. *passim*

*Meyer v. Nebraska,*
   262 U.S. 390, 399 (1923) ...................................................................... 2

*Olmstead v. United States,*
   277 U.S. 438, 478 (1928) ...................................................................... 3

*Pittsburgh Press Co. v. Human Relations Comm'n,*
   413 U.S. 376, 388 (1973) ..................................................................... 13

*Planned Parenthood of Southeastern Pa. v. Casey,*
   505 U.S. 833, 847 (1992) ................................................................. *passim*

*Raich v. Gonzales,*
   500 F.3d 850 (9th Cir. 2007) ............................................................. 9-11

*Reliable Consultants, Inc. v. Earle,*
   517 F.3d 738 (5th Cir. 2008) ............................................................. 5,11

*Roberts v. U.S. Jaycees,*
   468 U.S. 609, 617 (1984) ..................................................................... 14

*Roe v. Wade,*
   410 U.S. 113 (1973) .......................................................................... 4,6

*Silvester v. Harris,*
   41 F.Supp. 3d 927, 962 (E.D. Cal. 2014) ................................................... 7

*Skinner v. Oklahoma,*
   316 U.S. 535 (1942) ........................................................................... 4

*State v. DeCiccio,*
   105 A.3d 165, 203 (Conn. 2014) ............................................................ 7

*Steffel v. Thompson,*
   415 U.S. 452, 459 (1974) ..................................................................... 16

*U.S. v. Decastro,*
   682 F.3d 160, 169 (2d Cir. 2012) ........................................................... 7

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ..................................................................... *passim*

*Williams v. Morgan,*
   478 F.3d 1316 (11th Cir. 2007) ............................................................. 5

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

iii

OPPOSITION TO MOTION TO DISMISS
Case No.: 4:15-CV-01007 JSW

*Wilson v. Stocker,*
    819 F.2d 943, 946–47 (10th Cir. 1987) ................................................................ 16

**CONSTITUTIONAL PROVISIONS**

United States Constitution

     First Amendment ................................................................................................. 13

     Eleventh Amendment ......................................................................................... 15

     Fourteenth Amendment ................................................................................. *passim*

California Constitution ................................................................................................. 15

**STATUTES**

Cal. Pen. Code § 647(B) ......................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 11

**OTHER AUTHORITIES**

Laurence H. Tribe, *Lawrence v. Texas: The "Fundamental Right"*
    *That Dare Not Speak Its Name,*
    117 Harv. L. Rev. 1893, 1937 (2004) ................................................................... 2

Randy E. Barnett, *Scrutiny Land*,
    106 Mich. L. Rev. 1479, 1490 (2008) .............................................................. 10-11

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

iv

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

**OPPOSITION**

**INTRODUCTION / SUMMARY OF ARGUMENT**

This is a case about liberty.  It is about the right to be let alone (*Bowers v. Hardwick*, 478 U.S. 186, 199 (1986)(Blackmun, J., dissenting), about controlling one's own destiny (*Lawrence v. Texas*, 539 U.S. 558, 578 (2003)), and about limiting the role of the State in certain spheres of our lives (*Lawrence*, 539 U.S. at 562).

Plaintiffs are adults who knowingly wish to engage in sexual relationships, and they are willing to pay or to be paid in connection with these encounters.  California currently makes such conduct illegal, even though adult Americans enjoy substantial protection in deciding how to conduct their private lives in matters pertaining to sex.  Plaintiffs have thus come to this Court to challenge the State's intrusion on their private, intimate lives.

The Defendants (collectively, the "State") have moved to dismiss Plaintiffs' claims. The State claims that its ban on prostitution is a valid regulation of commerce that does not infringe upon any liberty interest of its citizens.

The State's Motion should be denied because it is a promise of the Constitution that there is a realm of personal liberty which the government may not enter (*Lawrence*, 539 U.S. at 562 (citing *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 847 (1992)), and California's ban on prostitution breaks that constitutional promise.

1

**I.**     **Under the Due Process Clause of the Fourteenth Amendment and *Lawrence v. Texas*, the State cannot criminalize consensual, adult, sexual activity that occurs in private, even if it occurs for compensation.**

The Due Process Clause of the Fourteenth Amendment of the Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  Nearly a century ago, the Supreme Court noted that "this Court has not attempted to define with exactness the liberty thus guaranteed [by the Due Process Clause of the Fourteenth Amendment]."  *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  Cases over the past century have applied the Due Process Clause in various contexts, and the Court recently pronounced its understanding of the Clause thusly:

> Liberty protects the person from unwarranted government intrusions into a dwelling or other private places.  In our tradition the State is not omnipresent in the home.  And there are other spheres of our lives and existence, outside the home, where the State should not be a dominant presence.  Freedom extends beyond spatial bounds.  Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, *and certain intimate conduct*.

*Lawrence v. Texas*, 539 U.S. 558, 562 (2003) (emphasis supplied); *see also* Laurence H. Tribe*, Lawrence v. Texas:  The "Fundamental Right" That Dare Not Speak Its Name*, 117 Harv. L. Rev. 1893, 1937 (2004) ("Justice Kennedy's opinion for the Court in *Lawrence* instead suggests the globally unifying theme of shielding from state control value-forming and value-transmitting relationships, procreative and non-procreative alike").

In its motion to dismiss, the State ignores *Lawrence* and its impact on substantive due process jurisprudence.  Instead, the State would have this Court allow it to run roughshod over the privacy of its citizens, regulating what happens in a bedroom as if it were the public square.  (*See generally* Motion, p. 10).

The importance of *Lawrence* stems from its emphatic rejection of these illiberal principles and the case that once condoned them, *Bowers v. Hardwick*, 478 U.S. 186 (1986).  In *Bowers*, the Court held that Georgia's criminal prohibition of sodomy was constitutional.  *Id.* at 196.  The *Bowers* majority analyzed the issue as "whether the Federal Constitution confers a fundamental right upon homosexuals to engage in sodomy." *Id.* at 190.  The

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

2

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

1  *Bowers* majority permitted the state to punish private sexual behavior, relying upon its twin

2  conclusions that such individual rights were not deeply rooted in this Nation's history and

3  tradition, nor were they implicit in the concept of ordered liberty. *Id.* at 194. The majority

4  therefore condoned the state imposing criminal punishments upon its citizens for merely

5  engaging in consensual sexual conduct in the privacy of their home. *Id.* at 196.

6  Four justices dissented in *Bowers*. They rejected how the majority framed the issue

7  as whether there is "a fundamental right to engage in homosexual sodomy." *Id.* at 199

8  (Blackmun, J., dissenting)  Rather, Justice Blackmun wrote in his dissent, *Bowers* was

9  "'about the most comprehensive of rights and the right most valued by civilized men,'

10  namely, 'the right to be let alone.'" *Id.* (*quoting Olmstead v. United States*, 277 U.S. 438,

11  478 (1928) (Brandeis, J., dissenting)). Indeed, Justice Blackmun concluded that the statute in

12  *Bowers* "denies individuals the right to decide for themselves whether to engage in particular

13  forms of private, consensual sexual activity." *Id.* Justice Blackmun thus dissented because

14  "depriving individuals of the right to choose for themselves how to conduct their intimate

15  relationships poses a far greater threat to the values most deeply rooted in our Nation's

16  history than tolerance of nonconformity could ever do." *Id.* at 214.

17  The echoes of Justice Blackmun's dissent in *Bowers* ring through Justice Kennedy's

18  majority opinion in *Lawrence*. In *Lawrence*, the Supreme Court struck down Texas's state

19  law prohibiting two persons of the same sex from engaging in certain intimate sexual conduct

20  as violating the Due Process Clause of the Fourteenth Amendment. 539 U.S. at 578.

21  The *Lawrence* Court found that the majority opinion in *Bowers* "fail[ed] to appreciate

22  the extent of the liberty at stake" and "misapprehended the claim of liberty there presented to

23  it. *Id*. at 567. Just like the State in this case tries to limit Plaintiffs claim to be about the

24  "right to engage in prostitution or to solicit prostitution" (Motion, p. 2), the *Bowers* majority

25  limited the issue there presented to be whether the Constitution confers "a fundamental right

26  upon homosexuals to engage in sodomy." *Lawrence*, 539 U.S. at 560 (*quoting Bowers*, 478

27  U.S. at 190). *Lawrence* rejects such myopic views of liberty.

28

3

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

1     Instead, *Lawrence* recognizes an "emerging awareness that liberty gives substantial

2  protection to adult persons in deciding how to conduct their private lives in matters

3  pertaining to sex." *Id*. at 559; *see also Skinner v. Oklahoma*, 316 U.S. 535 (1942) (the right to

4  have children); *Griswold v. Connecticut*, 381 U.S. 479 (1965) (the right to use

5  contraception); *Eisenstadt v. Baird*, 405 U.S. 438 (1972) (contraception); *Carey v.*

6  *Population Services Int'l*, 431 U.S. 678 (1971) (distribution of contraception); *Roe v. Wade*,

7  410 U.S. 113 (1973) (the right to have an abortion); *Planned Parenthood of Southeastern Pa.*

8  *v. Casey*, 505 U.S. 833 (1992) (abortion).

9     As evidence of this emerging recognition of the liberty interest in deciding how to

10  conduct one's private life in matters pertaining to sex, the *Lawrence* Court noted, among

11  other things, that as early as 1955, "[t]he American Law Institute promulgated the Model

12  Code and made clear that it did not recommend or provide for 'criminal penalties for

13  consensual sexual relations conducted in private.'" *Lawrence*, 539 U.S. at 572 (citing ALI,

14  Model Penal Code §213.2, Comment 2, p. 372 (1980)).  Thus, the fact that the Texas statute

15  proscribed homosexual conduct was not integral to the Court's decision in *Lawrence*; rather,

16  the Court's focus was on the fact that the State of Texas had provided for "criminal penalties

17  for consensual sexual relations conducted in private."  Texas was intruding into an intimate

18  sphere of the petitioners' lives "where the State should not be a dominant presence." *Id.* at

19  562.   Criminal penalties for consensual sexual relations conducted in private violate "a

20  promise of the Constitution that there is a realm of personal liberty which the government

21  may not enter." *Id.* at 578 (*citing Casey*, 505 U.S. 833, 847 (1992)).   And because of this

22  Constitutional promise, "[t]he State cannot demean [a person's] existence or control their

23  destiny by making their private sexual conduct a crime." *Id*. at 578.

24     Justice Scalia dissented in *Lawrence*.   To him, the *Bowers* majority had correctly

25  analyzed the issue.  He wrote that "[s]tate laws against bigamy, same-sex marriage, adult

26  incest, prostitution, masturbation, adultery, fornication, bestiality, and obscenity are likewise

27  sustainable only in light of *Bowers*' validation of laws based on moral choices.  ***Every single***

28

4

1    *one of these laws is called into question by today's decision*." *Id.* at 590 (Scalia, J.,

2    dissenting) (emphasis supplied).   Justice Scalia's dissent has proven a prescient harbinger:

3    bans on same-sex marriage have already been struck down in this Circuit. *See Latta v. Otter*,

4    771 F.3d 456, 479 (9th Cir. 2014) (*citing Lawrence*, 539 U.S. at 578) ("When Idaho tells

5    Idahoans or Nevada tells Nevadans that they are not free to marry the one they love if that

6    person is of the same sex, it interferes with the universal right of *all the State's citizens* –

7    whatever their sexual orientation – to 'control their destiny.'") (emphasis in original).

8          In its Motion, the State characterizes *Lawrence* as a decision only about homosexual

9    sodomy, with no broad-reaching impact on citizens' liberty interests in matters pertaining to

10   sex.  (*See* Motion, p. 11).   Yet, remarkably, the State makes no reference to how *Lawrence*

11   has impacted the many same-sex marriage cases.  *See, e.g.*, *Latta, supra*.   And the State

12   wholly ignores *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008), in which the

13   Fifth Circuit applied *Lawrence* and found unconstitutional a Texas law that prohibited the

14   "selling, advertising, giving, or lending of a device designed or marketed for sexual

15   stimulation."   There, the majority held that the court's job was to "apply *Lawrence*," and

16   recognize the establishment of a "right to sexual privacy." *Id.* at 745 n.32; *c.f. Williams v.*

17   *Morgan*, 478 F.3d 1316 (11th Cir. 2007).  As the *Reliable Consultants* Court explained:

18             The right the Court recognized was not simply a right to engage in the
               sexual act itself, but instead a right to be free from governmental intrusion
19             regarding "the most private human contact, sexual behavior." That
               *Lawrence* recognized this as a constitutional right is the only way to
20             make sense of the fact that the Court explicitly chose to answer the following
               question in the affirmative: "We granted certiorari ... [to resolve whether]
21             petitioners' criminal convictions for *adult consensual sexual intimacy* in the
               home violate their vital interests in liberty and privacy protected by the Due
22             Process Clause of the Fourteenth Amendment."

23   *Id.*, 517 F.3d at 744 (*citing Lawrence*, 539 U.S. at 564) (emphasis in original).

24         Laws criminalizing consensual, adult, sexual activity that occurs in private – even if it

25   occurs for compensation – should suffer the same fate as laws criminalizing homosexual

26   sodomy, same-sex marriage, and the purchase of sexual devices.  Under *Lawrence*, they

27   intrude on a citizen's liberty interest in deciding how to conduct themselves in matters

28

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

5

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

1  pertaining to sex.  They demean people's existence.  They prevent people from "controlling

2  their own destinies."  They are therefore unconstitutional.

3  **II.    The State incorrectly claims that this is a case about commerce and not about a
   person's fundamental liberty interest in deciding how to conduct his or her
4        private life in matters pertaining to sex.**

5        Under the State's reasoning, Cal. Pen. Code § 647(b) implicates no constitutional

6  liberty interest because it supposedly only proscribes commerce, not sex. (*See* Motion, p. 8).

7  The State characterizes the statute as merely criminalizing the sale of sex.  But this argument

8  relies upon the false premise that a state may criminalize any commercial transaction, even if

9  the commercial transaction implicates a fundamental liberty interest of the citizenry.  This

10  argument is not new, and it has been repeatedly rejected by the Supreme Court.

11        In many cases, the ability to enjoy or exercise basic rights requires a person to buy,

12  sell, or otherwise commercially interact with other citizens.  The Constitution's protection of

13  a fundamental right would in most cases be meaningless if a citizen is barred from paying or

14  receiving money in the exercise of that right.   American jurisprudence provides ample

15  examples in which courts have intervened to set aside purported "regulations of commerce"

16  that effectively thwarted the citizen's exercise of a fundamental right.  For example:

17        (1)    the right to obtain an abortion would be meaningless if it were completely

18  illegal to pay a doctor to perform the procedure (*See Roe v. Wade*, 410 U.S. 113 (1973));

19        (2)    the right to use contraception would be meaningless if it were completely

20  illegal to sell and distribute contraception (*See Carey v. Population Services, Int'l*, 431 U.S.

21  678 (1971) and other cases discussed, *infra*);

22        (3)    the right to keep and bear arms would be meaningless if it were completely

23  illegal to purchase and sell arms (*See Illinois Ass'n of Firearms Retailers v. City of Chicago*,

24  961 F. Supp. 2d 928, 936-8 (N.D. Ill. 2014) and other cases discussed, *infra*);

25        (4)    the right to freedom of the press would be meaningless if it were completely

26  illegal to sell newspapers (*See Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452

27  U.S. 640, 647 (1981)); and even

28

1    (5)   the right to engage in political speech would be meaningless if it were

2    completely illegal to give money to political candidates and organizations.  *See Buckley v.*

3    *Valeo*, 424 U.S. 1, 17 96 S., Ct. 612 (1976).

4    It is thus clear that the existence of a fundamental right carries with it a co-existent

5    right to engage in such transactions as are necessary to enjoy or exercise such a right.

6    **A.    *Recent Second Amendment cases demonstrate that individuals have a right***
7    ***to engage in commerce to exercise their constitutional rights.***

8    Recent cases discussing the exercise of Second Amendment rights are particularly

9    illustrative of the connection between commerce and fundamental rights.  In many of these

10   Second Amendment cases, courts have held that restrictions on the sale of firearms are

11   unconstitutional because the commercial restriction effectively prevents the exercise of the

12   fundamental right to keep and bear arms.

13   In *Silvester v. Harris*, the court observed self-evidently that "[t]he right to keep and

14   bear arms necessarily involves the right to purchase them."  41 F. Supp. 3d 927, 962 (E.D.

15   Cal. 2014).   That court held that a restriction "which impose[s] a 10-day waiting period

16   between purchase and delivery burdened conduct protected by the [Constitution]…since [the

17   restrictions] prohibited every person who purchased a firearm from taking possession of that

18   firearm for a minimum of 10 days, one could not exercise the right to keep and bear arms

19   without actually possessing a firearm." *Id.* at 961-62.

20   When analyzing such restrictions, many courts make no distinction between the

21   fundamental right at issue and the means of commerce necessary to exercise that right.  *See*

22   *U.S. v. Decastro*, 682 F.3d 160, 169 (2d Cir. 2012)  (engaging in analysis of statute affecting

23   "the fundamental right ***to obtain*** a firearm sufficient for self-defense") (emphasis added);

24   *Kampfer v. Cuomo*, 993 F. Supp. 2d 188, 195 (N.D. N.Y. 2014) ("fundamental right ***to***

25   ***obtain*** a firearm…"); *State v. DeCiccio*, 105 A.3d 165, 203 (Conn. 2014) (analyzing "the

26   ability ***to acquire*** a firearm");  *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F.

27   Supp. 2d 928, 936-38 (N.D. Ill. 2014) (reviewing history of regulation of ***sale and transfer*** of

28

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

7

1 firearms) ("[T]he ban on gun sales and transfers prevents Chicagoans from fulfilling, within

2 the limits of Chicago, the *most fundamental* prerequisite of legal gun ownership—that of

3 simple acquisition.") (emphasis in original).

4     Thus, state laws ostensibly regulating a transaction but which actually limit the

5 exercise of a fundamental right must be subject to the same analysis as those that restrict the

6 fundamental right itself.  A fundamental right carries with it the necessary ability to exercise

7 the right through attendant commercial transactions.

8     **B.**    ***Cases concerning the right to privacy also show that individuals have a***

9            ***right to engage in commerce to exercise their constitutional rights.***

10     In cases establishing the right to privacy, the right to purchase, sell, and communicate

11 in pursuit of the right has been repeatedly upheld.  Outright prohibitions on commercial

12 transactions necessary to give effect to the right to privacy are constitutionally impermissible.

13     This question is addressed most directly in *Carey v. Population Services Int'l*, 431

14 U.S. 678 (1977).  In *Carey*, the state attached criminal penalties for unlicensed ***sale*** (not use)

15 of contraceptives.  The plaintiff in *Casey* was a corporation engaged in sale of contraceptives.

16 The state in that case drew the same distinction that the State offers in the present case:  that

17 even if the citizen has a fundamental right to use contraception, the state was nonetheless free

18 to regulate the sale of the products.  *See id.* at 686-87.

19     Despite the state's argument in *Carey* that the criminal statute at issue was no more

20 than a regulation on manufacture and sale, the *Carey* Court rejected the state's argument and

21 invalidated the law under the Due Process Clause of the Fourteenth Amendment.  *Id.* at 687.

22 The Court found that the prohibition on sale of contraceptives unduly burdened fundamental

23 rights, and that the right to use the devices was inexorably intertwined with the right to

24 acquire contraceptives. *Id*. at 688.  "This is so not because there is an independent

25 fundamental 'right of access…', but because such access is essential to exercise the

26 constitutionally protected right…" *Id.*  The Court noted that a law limiting access to the

27

28

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

8

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

1   means of effectuating a fundamental right is subject to the same legal test as a law

2   prohibiting the exercise of the right.  *Id.*

3          The same principle emerges from other cases which delineate the fundamental right

4   of privacy.  In *Griswold,* the appellants were the Executive Director of Planned Parenthood,

5   an organization engaged in the distribution and sale of contraceptives, and a physician.  The

6   appellants did not themselves assert the right to use contraception, but rather they were third

7   parties who proposed to assist married couples by providing access to contraceptives.  *Id.* 381

8   U.S. at 480-81.  Thus, the appellants asserted the right to engage in a transaction, for money,

9   in furtherance of a fundamental right to privacy.  And even though the case involved this

10  commercial aspect, the Court still found that the convictions violated the Due Process

11  Clause.  *Id.* at 485-86.

12         In *Eisenstadt,* the appellee was an educator on contraception. 405 U.S. at 440 (1972).

13  He was convicted for exhibiting and distributing articles relating to contraception. *Id.* Again,

14  the appellee did not assert his own right to privacy as a user of contraception; rather, he was

15  convicted for transacting in contraceptives.  Nevertheless, the *Eisenstadt* Court invalidated

16  his conviction, holding that the criminal statute infringed upon a fundamental right.

17         In both *Griswold* and *Eisenstadt,* the Court held that the Due Process Clause provided

18  a right of privacy which included not just the right to use contraception, but the right to

19  obtain the product.  In *Carey,* the litigant established the right to sell the product for money.

20  The protections recognized by these three cases run not just to an individual whose privacy is

21  at stake, but extend to another party to a transaction in which privacy is invoked.  Thus, the

22  State's argument in this case (i.e. that it is simply regulating commerce) holds no water.

23  **III.    *Glucksberg*, *Raich*, and *IDK*, cited by the State, do not control this case.**

24         Because the State refuses to accept that *Lawrence* controls this case, it argues instead

25  that *Washington v. Glucksberg*, 521 U.S. 702 (1997), and *Raich v. Gonzales*, 500 F.3d 850

26  (9th Cir. 2007), "are controlling, and require dismissal of this case."   (Motion, p. 9).

27  However, both of these cases are distinguishable, and neither renders *Lawrence* inapplicable.

28

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

1   Factually, *Glucksberg* and *Raich* are distinguishable from the present case because

2   the rights at stake in those cases – assisted suicide and medical marijuana – do not implicate

3   the fundamental liberty interest of adult persons in deciding how to conduct their private

4   lives in matters pertaining to sex.  *Lawrence*, on the other hand, does.

5   More fundamentally, however, *Glucksberg* does not control the present case because

6   it uses a method for identifying fundamental rights that was plainly disregarded by the

7   *Lawrence* Court.  As the State correctly notes (*See* Motion, p. 7), under *Glucksberg*, a court

8   will recognize a fundamental right only when it is: (1) carefully defined; and (2) objectively,

9   deeply rooted in this Nation's history and tradition and implicit in the concept of ordered

10   liberty. *Glucksberg*, 521 U.S. at 721.  Commentators have referred to this method as the

11   "Glucksberg Two-Step", and have criticized it because, among other things, "a court may

12   rule however it wishes simply by choosing how to describe the right."  *See* Randy E. Barnett,

13   *Scrutiny Land*, 106 Mich. L. Rev. 1479, 1490 (2008).

14   Without directly explaining why, the *Lawrence* court flatly ignored the Glucksberg

15   Two-Step.  In fact, the majority opinion in *Lawrence* does not even cite to *Glucksberg*.  One

16   could plausibly surmise that *Lawrence*'s failure to so much as reference *Glucksberg* or its

17   method for identifying fundamental rights is attributable to the fact that *Glucksberg* derived

18   its method from *Bowers*, which *Lawrence* overruled.  *See Bowers* 478 U.S. at 191-92.

19   Regardless of the reason for the analytical shift from *Glucksberg* to *Lawrence*, *Lawrence* is

20   the more recent case and therefore controls.

21   Departing from the Glucksberg Two-Step, the *Lawrence* Court eschewed a reliance

22   upon history and tradition in favor of an inquiry focused upon the liberty interest at issue.

23   It must be acknowledged * * * that for centuries there have been powerful
24   voices to condemn homosexual conduct as immoral.  The condemnation has
     been shaped by religious beliefs, conceptions of right and acceptable
     behavior, and respect for the traditional family. * * * These considerations
25   do not answer the question before us, however.

26

27

28                                              10

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

1  *Lawrence*, 539 U.S. at 571 (citing *Casey*, 505 U.S. 833, 850 (1992)).  The *Lawrence* Court

2  never deemed it necessary to address the level of "scrutiny" that it was applying in the case.

3  "Instead, it rejected an open-ended conception of the police power of states and found that

4  the particular purpose of the statue was illegitimate or improper."  Barnett, *supra*, 106 Mich.

5  L. Rev. at 1495; *see also Reliable Consultants, Inc.*, 517 F.3d 738, 746 (5th Cir.

6  2008)(omitting any use of the Glucksberg Two-Step and noting that the court's standard was

7  simply to "apply *Lawrence*" to the statute making it a crime to sell sexual devices).

8        The other two cases cited by the State as purportedly requiring dismissal of this case

9  are also not controlling.  The *Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007) opinion

10  concerning the Due Process Clause that is cited by the State came from the Ninth Circuit, not

11  the Supreme Court.  It did not overrule or supersede *Lawrence*, nor could it have.  Finally,

12  the State suggests that *IDK, Inc. v. County of Clark*, 836 F.2d 1185 (9th Cir. 1988) disposes

13  of the issues raised in the present case.  *IDK* was 2-1 decision from the Ninth Circuit in 1988,

14  rendered well before the Supreme Court's rulings in *Casey* and *Lawrence*.  It involved escort

15  services' constitutional challenge to a county's licensing regulation – it was not a challenge

16  to the complete prohibition on certain intimate conduct as in this case.  *See id.*, 836 F.2d at

17  1187.  And the *IDK* Court's factual findings about "[t]he relationship between escort and

18  client" that the State cites to in its Motion were made at the summary judgment stage.  Those

19  factual findings were therefore unique to that case's factual record. And provide no basis to

20  dismiss this case as a matter of law under Fed. R. Civ. P. 12(b)(6).  Thus, neither *Glucksberg*,

21  *Raich*, or *IDK* require dismissal of this case.

22  **IV.**    **The interests that the State claims Section 647(b) advances do not warrant the
outright prohibition of consensual, adult, sexual activity that occurs in private,**

23         **even if it occurs for compensation.**

24        The State claims that the Section 647(b) relates to the State's purported interests in:

25  (1) deterring human trafficking and coercion; (2) deterring violence against prostitutes; (3)

26  deterring the spread of AIDS and venereal disease; (4) deterring crimes incidental to

27  prostitution; and (5) deterring commodification of sex.  (*See* Motion, pp. 11-13).  This

28   

11

1  argument draws upon factual assertions that cannot be considered upon a motion to dismiss

2  and therefore should not be considered by this Court.  (*See, e.g., Arpin v. Santa Clara Valley*

3  *Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)).  Nevertheless, to the extent the Court

4  wishes to entertain such arguments, Plaintiffs address them below.

5      The State's five purported interests in criminalizing prostitution can be lumped into

6  three categories: (1) deterring independent criminal offenses; (2) deterring the spread of

7  disease; and (3) deterring "commodification of sex".

8      As to the independent criminal offenses referenced by the State, every single one of

9  them is already separately prohibited as a crime in California.  Thus, regardless of whether

10  the State criminalizes prostitution, it already has the ability to investigate, arrest, and

11  criminally punish any person who commits any of the acts in which the State asserts an

12  interest.  None of these reasons therefore provide any independent basis to criminalize

13  consensual sexual activity that occurs in private.  Still, the State offers the deterrence of these

14  independent crimes as a pretext for criminalizing constitutionally-protected behavior.

15      As to the second interest advanced by the State, the current criminal prohibition of

16  prostitution only serves to increase the spread of STIs.  However, separate and apart from

17  this fact, the outright ban on prostitution no more prevents the spread of STIs than would the

18  outright ban on homosexual sodomy or, for that matter, sex in general.  But *Lawrence* makes

19  clear that the state cannot criminalize sex.  *See* Section I, *supra*.  Texas could not have

20  justified its ban on homosexual sodomy by claiming an interest in deterring the spread of

21  STIs, and California similarly cannot justify its ban on prostitution on that ground.

22      Lastly, the State dances around the fact that the State normatively disagrees with the

23  way in which Plaintiffs desire to conduct their private lives in matters pertaining to sex.  The

24  State prefers to claim that there is a state interest in "deterring commodification of sex"

25  rather than bluntly stating that the State finds the exchange of money for sexual activity to be

26  immoral.  Assuredly, the State has good reason for this verbal legerdemain – under

27  *Lawrence*, "the fact that a State's governing majority has traditionally viewed a particular

28

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

12

1   practice as immoral is not a sufficient reason for upholding a law prohibiting the practice."
2   *Lawrence*, 539 U.S. at 560. But this diction does not escape the fact, as alleged in the
3   Complaint, that Section 647(b) was enacted with no justification other than the State's moral
4   disapproval of the sexual conduct. (*See* Complaint ¶17). The law's draftsman did "not offer
5   any rationale for section 647(b), unlike the section's other subdivisions, beyond remarking
6   that 'the pimp, the panderer, and the prostitute cannot be permitted to flaunt their services at
7   large.'" (*Id.*) (internal citations omitted); *see also Coyote Publishing, Inc. v. Miller*, 598 F.3d
8   592, 605 (9th Cir. 2010) ("The sale of sex was not widely criminalized for much of our
9   nation's history. Prostitution was instead covered only by prohibitions on vagrancy and
10  'streetwalking'; the bans did not extend to brothels or other indoor locations in which sale of
11  sex occurred.") (internal citations omitted); *Bailey v. U.S.*, 98 F.2d 306, 308 (D.C. Cir. 1938)
12  (noting that at common law prostitution was not itself an indictable offense).

13          Under *Lawrence*, this moral disapproval, evidenced by the statute's own drafter, is a
14  patently insufficient justification for the law. And couching the moral disapproval as the
15  State having an interest in "deterring commodification of sex" does not change that fact.
16  Therefore none of the interests offered by the State, whether deterring independent crime,
17  deterring the spread of STIs, or finding the conduct in question to be immoral, provides any
18  legitimate basis for the State to trounce upon Plaintiffs' fundamental rights.

19  **V.      Plaintiffs' free speech claim is not subject to dismissal.**

20          The State's argument for dismissing Plaintiff's free speech claims under the First
21  Amendment is entirely premised on the belief that the commercial exchange of private sexual
22  activity is an illegal activity. (*See* Motion, p. 13). The State is correct in noting that a state
23  may ban commercial speech related to an illegal activity. *Central Hudson Gas & Elec. Corp.*
24  *v. Public Service Commission of New York*, 447 U.S. 557, 563 (1980)(*citing Pittsburgh Press*
25  *Co. v. Human Relations Comm'n*, 413 U.S. 376, 388 (1973)). However, as explained in
26  Section I, *supra*, the State cannot constitutionally make the commercial exchange of private
27  sexual activity a crime. As a result, the State also cannot constitutionally criminalize speech
28

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

13

1    relating to the commercial exchange of private sexual activity.  The State's argument relating

2    to Plaintiff's free speech claim is therefore not well taken.

3    **VI.     Plaintiff's freedom of association claim is not subject to dismissal.**

4           The Supreme Court has issued decisions referring to constitutionally protected

5    "freedom of association" in two distinct senses.  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617

6    (1984).  The first sense involves a freedom of intimate association which provides a right to

7    enter into certain intimate relationships (*Id.* at 617-18), the second sense involves a right to

8    expressive association.   *Id.* at 618.   In its Motion, the State only addressed the right to

9    expressive association, not the right to intimate association.  (*See* Motion, pp. 13-14).

10          "[B]ecause the Bill of Rights is designed to secure individual liberty, it must afford

11   the formation and preservation of certain kinds of highly personal relationships a substantial

12   measure of sanctuary from unjustified interference by the State."  *Id.* (i).  "The freedom to

13   enter into and carry on certain intimate or private relationships is a fundamental element of

14   liberty protected by the Bill of Rights."  *Bd. of Dirs. of Rotary Int'l v. Rotary Club of*

15   *Duarte,* 481 U.S. 537, 545 (1987).  "[C]hoices to enter into and maintain certain intimate

16   human relationships must be secured against undue intrusion by the State because of the role

17   of such relationships in safeguarding the individual freedom that is central to our

18   constitutional scheme."  *Roberts*, 468 U.S. at 617–18.

19          To determine whether a particular relationship is protected by the right to intimate

20   association the court should look to "size, purpose, selectivity, and whether others are

21   excluded from critical aspects of the relationship."  *Fair Hous. Council of San Fernando*

22   *Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1220-21 (9th Cir. 2012).  The association at

23   issue in the present case constitutes such an intimate relationship.  It is of a small size and

24   each party is able to exercise selectivity in choosing their partners.  Likewise, the parties in

25   an intimate sexual relationship have the right to maintain exclusivity in their choices.

26          For all of these reasons, California's criminalization of prostitution impermissibly

27   interferes with Plaintiffs' right of association.

28                                                    14

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

**VII.   The Plaintiffs have a protectable property interest in their desired profession and a substantive due process right to engage in it.**

The Plaintiffs have adequately pleaded a claim for a violation of their due process, and the State's argument for dismissal of this claim is an entirely circular syllogism that fails to establish that there is no set of facts under which Plaintiffs can prevail as a matter of law.

The State's argument is simple.  When Plaintiffs challenge Section 647(b) claiming that it infringes upon their right to earn a living, the State responds that Plaintiffs have no protected right to earn a living because their chosen profession is illegal under Section 647(b).  Ergo, according to the State, Plaintiffs cannot challenge Section 647(b) because Section 647(b) criminalizes their conduct. This argument begs the question that is posed by Plaintiffs' claims.  The State's argument would foreclose any request for judicial review of a criminal statute under any circumstances and ignores the basic tenet of due process jurisprudence stated in *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897).

> The 'liberty' mentioned in the [Fourteenth] Amendment means, not only the right of the citizen to be free from the mere physical restraint of his person … but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above-mentioned.

The position offered by the State is brazen in its simplicity, but similarly clear in its flaw.  Its argument is entirely conclusory and does not dispose of Plaintiffs' claim.

**VIII.   Plaintiffs' claims under the California Constitution.**

The State moves to dismiss Plaintiffs' claim under the California Constitution because of the Eleventh Amendment.  Plaintiffs do not oppose this request.

**IX.   Plaintiffs' as-applied challenge does not fail.**

The State makes two arguments to dismiss Plaintiffs' as-applied challenge.  First, the State offers the derivative argument that because, according to the State, Plaintiffs' facial challenge must fail, so too must Plaintiffs' as-applied challenge fail.  (*See* Motion, p. 16).

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

15

SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202

1    However, as demonstrated above, Plaintiffs' facial challenge cannot be dismissed as a matter

2    of law and, thus, neither can Plaintiffs' as-applied challenge.

3          Second, the State argues that Plaintiffs' as-applied challenge should be dismissed

4    because the Plaintiffs' claims are "speculative and not ripe". (Motion, p. 17). The State asks

5    this Court to believe that Plaintiffs would actually have to violate Section 647(b) for them to

6    state a cognizable as-applied challenge. This is not the case. Plaintiffs are parties "against

7    whom these criminal statutes directly operate...." *Doe v. Bolton,* 410 U.S. 179, 188 (1973).

8    "[W]hen fear of criminal prosecution under an allegedly unconstitutional statute is not

9    imaginary or wholly speculative, a plaintiff need not 'first expose himself to actual arrest or

10   prosecution to be entitled to challenge [the] statute.'" *Id.* (*quoting Steffel v. Thompson,* 415

11   U.S. 452, 459 (1974)). Thus, Plaintiffs' as-applied challenge is ripe for review. *Wilson v.*

12   *Stocker,* 819 F.2d 943, 946–47 (10th Cir. 1987).

13   **X.    Conclusion.**

14         The Court should deny the Defendants' Motion to Dismiss.

15                                               Respectfully submitted,

16   Dated:  June 8, 2015                         H. LOUIS SIRKIN
                                                  BRIAN P. O'CONNOR
17                                                D. GILL SPERLEIN

18                                               By:  /s/ H. Louis Sirkin_____
19                                                    H. Louis Sirkin

20   578730.1                                    *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28
                                             16