1   KAMALA D. HARRIS
    Attorney General of California
2   TAMAR PACHTER
    Supervising Deputy Attorney General
3   SHARON L. O'GRADY
    Deputy Attorney General
4   State Bar No. 102356
      455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
      Telephone:  (415) 703-5899
6     Fax:  (415) 703-1234
      E-mail:  Sharon.OGrady@doj.ca.gov
7   *Attorneys for Defendant Kamala D. Harris in her
    official capacity as Attorney General*

8

9               IN THE UNITED STATES DISTRICT COURT

10             FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12

13  **EROTIC SERVICE PROVIDER LEGAL,**          4:15-CV-01007-JSW
    **EDUCATION & RESEARCH PROJECT;**
14  **K.L.E.S.; C.V.; J.B.; AND JOHN DOE,**     **ATTORNEY GENERAL'S REPLY IN**
                                                **FURTHER SUPPORT OF MOTION TO**
15                          Plaintiffs,         **DISMISS**

16                                              Date:        August 7, 2015
                    **v.**                      Time:        9:00 a.m.
17                                              Dept:        5, 2d Floor
                                                Judge:       The Hon. Jeffrey S. White
18  **GEORGE GASCON, in his official capacity** Trial Date:  Not set
    **as District Attorney of the City and County**
19  **of San Francisco; EDWARD S.**            Action Filed:  March 4, 2015
    **BERBERIAN, JR., in his official capacity as**
20  **District Attorney of the County of Marin;**
    **NANCY E. O'MALLEY, in her official**
21  **capacity as District Attorney of the County**
    **of Alameda; JILL RAVITCH, in her official**
22  **capacity as District Attorney of the County**
    **of Sonoma; and KAMALA D. HARRIS, in**
23  **her official capacity as Attorney General of**
    **the State of California,**
24
                            Defendants.
25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

Introduction ........................................................................................................ 1

4

Argument ........................................................................................................... 1

5

I.      Neither The Fourteenth Amendment nor *Lawrence v. Texas* provides a
        constitutional right to engage in prostitution. ........................................ 1

6

        A.      *Lawrence v. Texas* does not support plaintiffs' substantive due
                process claims. ............................................................................ 1

7

        B.      *Lawrence* did not overrule *Washington v. Glucksberg*. ........................... 3

8

II.     Prostitution is not a necessary component of constitutionally protected
        private sexual activity. .......................................................................... 5

9

III.    Plaintiffs' freedom of intimate association claim is subsumed within their
        meritless substantive due process claim................................................ 6

10

11

IV.     Plaintiffs' free speech and property rights claims fail because they rest on
        plaintiff's meritless substantive due process claims. ............................... 8

12

V.      Plaintiffs' as-applied challenge fails . .................................................... 8

VI.     The statute is an appropriate legislative choice...................................... 9

13

        A.      Plaintiffs' challenge does not raise factual issues and may be
                disposed of in this motion. ........................................................... 9

14

        B.      Heightened scrutiny is not appropriate. ...................................... 9

15

        C.      The statute advances legitimate and important state interests. ............... 10

Conclusion ...................................................................................................... 11

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Arpin v. Santa Clara Valley Transportation Agency*
5
    261 F.3d 912 (9th Cir. 2001)................................................................................9

6

*Bowers v. Hardwick*
7
    478 U.S. 186 (1986)...........................................................................................1, 2

*Bowers v. Whitman*
8
    671 F.3d 905 (9th Cir. 2012).............................................................................10

9

*Buckley v. Valeo*
10
    424 U.S. 1 (1976)..................................................................................................6

11

*Carey v. Population Servs. Int'l*
    431 U.S. 678 (1977)..............................................................................................5

12

*Coyote Publ'g, Inc. v. Miller*
13
    598 F.3d 592 (9th Cir. 2010).............................................................................10

14

*Doe v. Bolton*
    410 U.S. 179 (1973)..............................................................................................8

15

*Eisenstadt v. Baird*
16
    405 U.S. 438 (1972)..............................................................................................6

17

*F.C.C. v. Beach Commc'ns, Inc.*
18
    508 U.S. 307 (1993)..............................................................................................9

19

*Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*
    666 F.3d 1216 (9th Cir. 2012).............................................................................7

20

*Fleisher v. City of Signal Hill*
21
    829 F.2d 1491 (9th Cir. 1987).............................................................................7

22

*Griswold v. Connecticut*
23
    381 U.S. 479 (1965)...........................................................................................5, 6

24

*Hoye v. City of Oakland*
    653 F.3d 835 (9th Cir. 2011)................................................................................8

25

*IDK, Inc. v. County of Clark*
26
    836 F.3d 1185 (9th Cir. 1988).....................................................................4, 5, 6, 7

27

*Int'l Bhd. of Elec. Workers, Local 1245 v. Skinner*
28
    914 F.2d 1454 (9th Cir. 1990)...........................................................................10

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3   *Latta v. Otter*
4        771 F.3d 456 (9th Cir. 2014)...............................................................2, 3

5   *Lawrence v. Texas*
         539 U.S. 588 (2003) ...................................................................... *passim*

6   *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*
7        228 F.3d 1043 (9th Cir.2000)...............................................................7

8   *Pickup v. Brown*
         740 F.3d 1208 (9th Cir. 2013).......................................................... *passim*
9

10  *Planned Parenthood of Southeastern Pa. v. Casey*
         505 U.S. 833 (1992) ............................................................................1

11  *Raich v. Gonzales*
12       500 F.3d 850 (9th Cir. 2007)...........................................................3, 4, 8

13  *Reliable Consultants, Inc. v. Earle*
         517 F.3d 738 (5th Cir. 2008).............................................................2, 3
14

15  *Roberts v. U.S. Jaycees*
         468 U.S. 609 (1984) ...........................................................................7

16  *Rodrigueez de Quijas v. Shearson/American Express Inc.*
17       490 U.S. 477 (1989) ...........................................................................4

18  *Romero–Ochoa v. Holder*
19       712 F.3d 1328 (9th Cir. 2013).............................................................9

20  *United States v. Carter*
         266 F.3d 1089 (9th Cir. 2001)...........................................................10

21  *United States v. Salerno*
22       481 U.S. 739 (1987) ...........................................................................10

23  *Washington v. Glucksberg*
         521 U.S. 702 (1997) ........................................................................3, 4, 9, 10
24

25  *Wilson v. Stocker*
         819 F.2d 943 (10th Cir. 1987).............................................................8

26  *Zucco Partners, LLC v. Digimarc Corp.*
27       552 F.3d 981 (9th Cir. 2009)...............................................................9

28

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

Controlled Substances Act ...........................................................................................................8

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment.................................................................................................................6, 7
    Second Amendment ...............................................................................................................6
    Fourteenth Amendment................................................................................. *passim*

iv

**INTRODUCTION**

This case is not about liberty, the right to be let alone, or intrusion into private lives.  It is not even about sex.  It is about commerce – specifically the ugly commerce of prostitution.  No American judicial authority supports a constitutional right to engage in it.  The Court should dismiss the complaint without leave to amend.

**ARGUMENT**

**I.    NEITHER THE FOURTEENTH AMENDMENT NOR *LAWRENCE V. TEXAS* PROVIDES A CONSTITUTIONAL RIGHT TO ENGAGE IN PROSTITUTION.**

    **A.    *Lawrence v. Texas* Does Not Support Plaintiffs' Substantive Due Process Claims.**

Plaintiffs' primary argument, that *Lawrence v. Texas*, 539 U.S. 588 (2003), prohibits a state from criminalizing prostitution engaged in by adults (Opposition, *passim*) is baseless.  Nothing in *Lawrence v. Texas* supports or suggests a fundamental due process right to engage in prostitution. The *Lawrence* Court's concern was not with sexual acts per se, but as part of a personal relationship.  539 U.S. at 566-67.  Indeed, it overruled its earlier decision in *Bowers v. Hardwick*, 478 U.S. 186 (1986), rejecting the analysis that focused on sodomy as merely a sex act, rather than as part of the expression of a personal relationship.  *Id*. at 566-67.  The Court reasoned, "[w]hen sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring."  *Id*. at 567.

In this same vein, the *Lawrence* Court found that *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992), "reaffirmed the liberty protected by the Due Process Clause" and "again confirmed that our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing and education."  *Lawrence*, 539 U.S. at 573-74.  Quoting from *Casey*, the *Lawrence* Court explained:

> "These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."

1

1    *Id.* at 574.  *Lawrence's* core message is that sexual actions may be an important part of personal

2    relationships, not that sex itself is a fundamental right.

3        Although the Court did not rest its holding on equal protection, it expressed concern that

4    the holding in *Bowers* stigmatized homosexual conduct, and was "an invitation to subject

5    homosexual persons to discrimination both in the public and in the private spheres. . . .  Its

6    continuance as precedent demeans the lives of homosexual persons."  *Id.* at 575.  *Lawrence*

7    analyzed the way in which sodomy is a component of a personal relationship of particular

8    significance to homosexuals.  *Id.* at 575-76.  So even if *Lawrence* had not been explicit that the

9    relationships it sought to protect did not encompass the commercial relationship between

10   prostitute and client, or other potentially coercive situations, *id.* at 578, neither the Court's

11   holding in *Lawrence* nor its reasoning supports a conclusion that the Fourteenth Amendment

12   protects commerce in sex.

13       Plaintiffs' suggestion that the prostitute-client relationship is analogous to that of same-sex

14   couples who wish to marry, and that the issue of same-sex marriage is just another "matter[]

15   pertaining to sex," Opposition at 5, reflects a basic misunderstanding of the difference between an

16   intimate relationship and sex for hire.  In *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014), which held

17   that Idaho and Nevada laws prohibiting same-sex marriages or their recognition violated the

18   Equal Protection Clause of the Fourteenth Amendment, the Court did not focus on sex, but on the

19   underlying relationship of which it is a part, and quoted *Lawrence* for that proposition:

20       Just as "it would demean a married couple were it to be said marriage is simply about
         the right to have sexual intercourse," *Lawrence,* 539 U.S. at 567, 123 S. Ct. 2472, it
21       demeans married couples—especially those who are childless—to say that marriage
         is simply about the capacity to procreate.
22

23   *Id.* at 472.  Thus, *Latta* does not support including prostitution among the fundamental rights

24   guaranteed by substantive due process.

25       *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008), which struck down a

26   Texas law that criminalized the sale of sexual devices, also does not further plaintiffs' cause.

27   That decision, too, focused on sexual activity as one aspect of a personal relationship:

28

2

1

> [Plaintiffs] contend that many people in Texas, both married and unmarried, use sexual devices as an aspect of their sexual experiences. For some couples in which one partner may be physically unable to engage in intercourse, or in which a contagious disease, such as HIV, precludes intercourse, these devices may be one of the only ways to engage in a safe, sexual relationship. Others use sexual devices to treat a variety of therapeutic needs, such as erectile dysfunction. . . .

2

3

4

5   *Id*. at 742 (footnotes omitted).  The Court specifically rejected the suggestion that its decision was

6   "equivalent to extending substantive due process protection to the 'commercial sale of sex'," *id*.

7   at 746, explaining:

8

> The sale of a device that an individual may choose to use during intimate conduct with a partner in the home is not the "sale of sex" (prostitution). Following the State's logic, the sale of contraceptives would be equivalent to the sale of sex because contraceptives are intended to be used for the pursuit of sexual gratification unrelated to procreation. This argument cannot be accepted as a justification to limit the sale of contraceptives. The comparison highlights why the focus of our analysis is on the burden the statute puts on the individual's right to make private decisions about consensual intimate conduct. Furthermore, there are justifications for criminalizing prostitution other than public morality, including promoting public safety and preventing injury and coercion.

9

10

11

12

13

14   *Id*.  In short, neither *Latta* nor *Reliable Consultants* provide support for extending the holding in

15   *Lawrence* to recognition of prostitution as a fundamental right.

16       **B.     *Lawrence* Did Not Overrule *Washington v. Glucksberg*.**

17       Plaintiffs wish to identify the interest at issue in this case broadly – as the right of

18   consenting adults to have sex – and argue that *Washington v. Glucksberg*, 521 U.S. 702 (1997),

19   which requires that the asserted interest be narrowly drawn, was implicitly overruled by

20   *Lawrence v. Texas* and is no longer good law.  Opposition at 10.  From that premise, plaintiffs

21   suggest that *Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007), also is not good law.  Opposition at

22   11.  Plaintiffs are wrong.

23       The Supreme Court has not overruled *Glucksberg*, and the Ninth Circuit continues to follow

24   it.  Indeed, in *Raich v. Gonzales*, 500 F.3d 850, 863-66, the Ninth Circuit applied the *Glucksberg*

25   analysis four years after *Lawrence* was decided, and harmonized it with *Lawrence*'s "emerging

26   awareness model," which considers the extent to which there exists a trend among the states

27

28

3

toward recognizing the asserted fundamental right at issue.[1]  Recently, in *Pickup v. Brown*, 740

F.3d 1208 (9th Cir. 2013), a case upholding a California law prohibiting mental health providers

from providing sexual orientation change efforts therapy to children, the Ninth Circuit again

followed *Glucksberg's* directive that "courts should precisely define substantive due process

rights."  *Id*. at 1235.  It rejected plaintiffs' argument that the right at issue was parents' "right to

raise their children as they see fit," and found that "the precise question at issue is whether

parents' fundamental rights include the right to choose for their children a particular type of

provider for a particular medical or mental health treatment that the state has deemed harmful."

*Id*.  *Glucksberg* remains good law, and *Glucksberg* and *Raich* control this case.[2]  Under

*Glucksberg*, the interest at stake in this case is the right to engage in prostitution, not the right to

engage in consensual sexual activities.  Prostitution is not a fundamental right.

Plaintiffs' attempt to distinguish *IDK, Inc. v. County of Clark*, 836 F.3d 1185 (9th Cir.

1988), Opposition at 11, is similarly flawed.  The fact that *IDK, Inc.*, which held that the

relationship between paid escort and client was not an association subject to protection under

either the Fourteenth or First Amendments, was decided on summary judgment and not on a

motion to dismiss is irrelevant to Plaintiff's facial challenge to California's prostitution law,

which is a legal question.  Nor is the circumstance that *IDK* involved a regulation that was not a

---

[1]  Following the *Raich* and *Lawrence* analysis, the Attorney General's opening brief (pages 8-9) explains that there is no trend toward legalizing prostitution in this country, and plaintiffs do not contend otherwise.

The prerogative for overruling Supreme Court decisions lies with that Court, not this one. *Rodrigueez de Quijas v. Shearson/American Express Inc.* 490 U.S. 477, 488 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").  The fact that commentators have criticized the *Glucksberg* decision, as plaintiffs argue, is immaterial, since this Court is bound by Supreme Court and Ninth Circuit opinions, not legal commentary. However, the only commentator plaintiffs cite for this proposition is Randy E. Barnett (Opposition Brief at 10), who was counsel for the unsuccessful plaintiff in *Raich*.  *Raich*, 500 F.3d at 854.

[2]  Plaintiffs also argue that *Glucksberg* and *Raich* are distinguishable because those cases did not involve sex.  Opposition at 10.  But other than their misplaced reliance on *Lawrence*, plaintiffs proffer no support for abandoning established substantive due process analysis merely because the right being asserted involves sexual conduct..

4

1   complete prohibition relevant, since the Ninth Circuit held that the escort-client relationship itself

2   was not constitutionally protected.  836 F.3d at 1193-96.  Where no constitutionally protected

3   conduct is at stake, a statute is judged by the rational basis test (discussed at pages 9-10) below).

4   **II.    PROSTITUTION IS NOT A NECESSARY COMPONENT OF CONSTITUTIONALLY
          PROTECTED PRIVATE SEXUAL ACTIVITY.**

5

6        Plaintiffs argue that "[o]utright prohibitions on commercial transactions necessary to give

7   effect to the right of privacy are constitutionally impermissible."  Opposition at 8.  The Attorney

8   General has no argument with that proposition.  One cannot reasonably use contraceptives if one

9   cannot buy them.  So a prohibition on the sale of contraceptives unduly burdens a citizen's

10  fundamental right to use contraceptives, "not because there is an independent fundamental 'right

11  of access . . .', but because such access is essential to exercise the constitutionally protected

12  right."  *Carey v. Population Servs. Int'l*, 431 U.S. 678, 688 (1977).

13       But the argument fails here because the act of prostitution is not "essential to the exercise"

14  of the right of privacy or any other fundamental right.  Sex is not a product, like contraception or

15  a firearm, that cannot be reasonably obtained if not purchased.  Unlike abortion, sex does not

16  require the specialized services of a medical provider, for which payment reasonably is expected.

17  One can have personal, intimate relationships, including sexual relationships, without engaging in

18  the crime of prostitution.  Absent some other limiting law or regulation, such as laws against

19  incest, pedophilia, and the like, plaintiffs can engage in sexual relations with any willing partner.

20  They just cannot pay or be paid for it.

21       Plaintiffs have cited no case that holds that the commercial activity of prostitution is

22  necessary for the exercise of a fundamental right, and the Attorney General is aware of none.  As

23  noted above, *Carey* does not support plaintiffs' position.  Nor do the other cases on which

24  plaintiffs rely support their cause.  For example, in *Griswold v. Connecticut*, 381 U.S. 479, 482

25  (1965), in which the Supreme Court struck down a state law prohibiting providing medical advice

26  concerning contraception, the Court emphasized that the case was *not* about commerce.

27       We do not sit as a super-legislature to determine the wisdom, need, and propriety of
         laws that touch economic problems, business affairs, or social conditions. *This law,*

28

5

*however, operates directly on an intimate relation of husband and wife* and their physician's role in one aspect of that relation.

(Emphasis added.)  The Court also emphasized that the anti-contraception laws at issue in that case used "means having the maximum destructive impact" on that marital relationship.[3]  *Id.* at 485. Unlike *Griswold*, California's prostitution law does not impose a significant burden on a fundamental right.

### III.  PLAINTIFFS' FREEDOM OF INTIMATE ASSOCIATION CLAIM IS SUBSUMED WITHIN THEIR MERITLESS SUBSTANTIVE DUE PROCESS CLAIM.

Plaintiffs point out that the Supreme Court recognizes two types of freedom of association, freedom of expressive association and a right to intimate associations, and state that the Attorney General's motion addressed only freedom of expressive association.  (Opposition at 14.)

Freedom of expressive association is a right protected by the First Amendment.  *Pickup v. Brown*, 740 F.3d at 1233; *IDK, Inc. v. Clark County*, 836 F.2d at 1191-92.  The freedom of association allegations in Plaintiffs' Fourth Claim are expressly based on the First Amendment.  Complaint ¶¶ 55 ("The First Amendment affords . . . "), 57 ([Defendants] . . . are depriving and will continue to deprive Plaintiffs of rights secured by the First Amendment . . . .").  The Attorney General addressed those claims in its opening brief, pages 13-14.  Plaintiff's Opposition does not attempt to defend its claim of a right to expressive association based on the First Amendment, therefore its Fourth Claim should be dismissed.

The second type of freedom of association recognized by the Supreme Court, freedom of intimate association, is protected, not by the First Amendment, but by the Fourteenth

---

[3] Although plaintiffs describe *Eisenstadt v. Baird*, 405 U.S. 438 (1972), as a case involving "transacting in contraceptives" (Opposition at 9), the plaintiff was convicted of *giving* a young woman a contraceptive foam in violation of Massachusetts law.  405 U.S. at 1031.  The Court held that the law, which prohibited giving contraceptives to unmarried persons, violated the equal protection rights of single persons.  *Id.* at 443.

None of the other cases plaintiffs cite address substantive due process; nor do they involve assertion of rights relating to privacy, intimate associations, or sexual activity.  *Buckley v. Valeo*, 424 U.S. 1, 14 (1976), was a First Amendment case involving political speech.  Plaintiffs discuss several Second Amendment cases, Opposition at 7-8.  But the link between being able to buy a gun and the right to bear arms is obvious; the only way most people can acquire a firearm is by purchase, or by obtaining one from someone else who has acquired by purchase.

6

1   Amendment's Substantive Due Process Clause.  *Pickup v. Brown*, 740 F.3d at 1233; *IDK, Inc. v.*

2   *Clark County*, 836 F.2d at 1193.  It protects relationships "'that attend the creation and sustenance

3   of a family" and similar 'highly personal relationships.'"  *Id*. at 1193 (quoting *Roberts v. U.S.*

4   *Jaycees*, 468 U.S. 609, 618-19 (1984)).  Any such claim is duplicative of petitioners' substantive

5   due process claims set forth in their First Claim, and fails for the same reasons. *See Fleisher v.*

6   *City of Signal Hill*, 829 F.2d 1491, 1500 (9th Cir. 1987) (holding that "freedom of intimate

7   association is coextensive with the right of privacy; both the freedom of intimate association and

8   the right of privacy describe that body of rights that protect intimate human relationships from

9   unwarranted intrusion or interference by the state"); *see also IDK, Inc. v. County of Clark*, 836

10   F.2d at 1199 (to the same effect).  As discussed in the Attorney General's opening brief at

11   pages 9-10, the Ninth Circuit  has held that the relationship between paid escort and client is not

12   an intimate relationship protected by the Fourteenth Amendment.  *IDK, Inc. v. County of Clark*,

13   836 F.3d at 1195-96.  *Accord, Pickup v. Brown*, 740 F.3d at 1233 (holding that "[t]he relationship

14   between a client and psychoanalyst lasts only as long as the client is willing to pay the fee.  Even

15   if analysts and clients meet regularly and clients reveal secrets and emotional thoughts to their

16   analysts, these relationships simply do not rise to the level of a fundamental right") (quoting *Nat'l*

17   *Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1050 (9th

18   Cir.2000)).

19          Of the three cases plaintiffs cite in support of their "intimate association" argument, only

20   *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216 (9th Cir.

21   2012), identified the relationship at issue as constitutionally protected.  In concluding that the

22   relationship between roommates is an intimate association protected by the Fourteenth

23   Amendment, the Court reasoned, "[a]side from immediate family or a romantic partner, it's hard

24   to imagine a relationship more intimate than that between roommates," and "[b]ecause of a

25   roommate's unfettered access to the home, choosing a roommate implicates significant privacy

26   and safety considerations."  *Id*. at 1221-22.  The prostitute-customer relationship is not akin to the

27   relationship between roommates.  It is not protected by the Fourteenth Amendment; therefore

28   plaintiffs have no valid freedom of intimate association claim.

7

**IV.  PLAINTIFFS' FREE SPEECH AND PROPERTY RIGHTS CLAIMS FAIL BECAUSE THEY REST ON PLAINTIFF'S MERITLESS SUBSTANTIVE DUE PROCESS CLAIMS.**

Plaintiffs appear to concede that both their free speech and property rights claims depend on the success of their substantive due process claims.  Opposition at 13-15.  They concede that the State may ban commercial speech related to an illegal activity (*id*. at 13), and do not appear to argue that the Fourteenth Amendment gives them a right to engage in otherwise illegal employment (*id*. at 15).  Because plaintiffs have no cognizable due process claims for the reasons described at pages 1-6 above, their free speech and property rights claims fail as well.

**V.  PLAINTIFFS' AS-APPLIED CHALLENGE FAILS.**

Plaintiffs' argument that they have a valid as-applied challenge is mistaken.  Plaintiffs have not and cannot allege any particular circumstances that would render the statute, if facially valid, nevertheless invalid as specifically applied to them.  *Hoye v. City of Oakland,* 653 F.3d 835, 857-58 (9th Cir. 2011).  The Ninth Circuit's decision in *Raich v. Gonzales*, 500 F.3d 850, is illustrative.  The plaintiff in that case argued that she was entitled to a preliminary injunction prohibiting enforcement of the Controlled Substances Act against her because it was necessary for her to use medical marijuana, the only effective treatment for her intolerable pain.  *Id*. at 857.  The Court held that, although a necessity defense might be available in the context of a criminal prosecution, a prosecution should not be prospectively enjoined, reasoning that "a necessity defense is best considered in the context of a concrete case where a statute is allegedly violated, and a specific prosecution results from that violation."  *Id*. at 861.  Here, too, on any as-applied challenge Plaintiffs would be effectively seeking to enjoin prosecution of California's prostitution law against them, but their complaint does not and cannot provide any context that would differentiate their situation from the conduct generally covered by the statute.

Plaintiffs' reliance on *Doe v. Bolton*, 410 U.S. 179 (1973), and *Wilson v. Stocker*, 819 F.2d 943 (10th Cir. 1987), is misplaced.  Both cases addressed facial, not as-applied, challenges; the issue was whether plaintiffs presented a justiciable controversy and had standing to assert that facial challenge.  *Bolton*, 410 U.S. at 188-89; *Wilson*, 819 F.2d at 946-47.  No one is arguing that plaintiffs lack standing.

1

## VI.   THE STATUTE IS AN APPROPRIATE LEGISLATIVE CHOICE

2

### A.   Plaintiffs' Challenge Does Not Raise Factual Issues and May Be Disposed of in this Motion.

3

4

Plaintiffs argue that the State's justifications for making prostitution a misdemeanor "draws

5

upon factual assertions that cannot be considered on a motion to dismiss."  Opposition at 12.

6

However, their sole authority for this, *Arpin v. Santa Clara Valley Transportation Agency*, 261

7

F.3d 912, 925 (9th Cir. 2001), stands for no more than the proposition that evidence should not be

8

considered on a motion to dismiss.

9

The Attorney General's justifications for the statute do not draw on "factual assertions."[4]

10

Under the rational basis test, the State is not required to provide evidence supporting the wisdom

11

of its legislative enactment.  *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)

12

(holding that those attacking the rationality of legislation must negate every conceivable basis

13

which might support it, and the legislature is not required "to articulate its reasons for enacting a

14

statute").  A court does not "judge the wisdom, fairness or logic of legislative choices." *FCC v.*

15

*Beach Commc'ns, Inc*., 508 U.S. at 313; *Romero–Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir.

16

2013).  The court asks only "whether there are plausible reasons" for the legislature's action, and

17

if there are, the court's inquiry "is at an end." *Pickup v. Brown*, 740 F.3d at 1232; *Romero–Ochoa*

18

*v. Holder*, 712 F.3d at 1331.  The Attorney General's opening brief laid out not merely plausible

19

but compelling reasons supporting California's decision to make prostitution a crime.

20

### B.   Heightened Scrutiny Is Not Appropriate.

21

It is not clear whether plaintiffs simply dispute that the law survives rational basis review,

22

or claim that a heightened scrutiny is appropriate.  Opposition at 11-13.  To the extent their

23

Opposition could be interpreted as advocating heightened scrutiny, it is incorrect.  Heightened

24

scrutiny is not appropriate where the interest asserted is not a fundamental right.  *See Glucksberg*,

25

26

---

[4] The Attorney General asked the Court take judicial notice of certain matters, which may properly be considered on a motion to dismiss. *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 991 (9th Cir. 2009).

27

28

9

1   521 U.S. at 720; *Pickup v. Brown* 740 F.3d at 1232; *Bowers v. Whitman*, 671 F.3d 905, 916 (9th

2   Cir. 2012).  The statute at issue in this case does not target a fundamental right.

3   **C.    The Statute Advances Legitimate and Important State Interests.**

4          Plaintiffs do not challenge the proposition that prostitution is extremely dangerous for

5   prostitutes, or the link between prostitution and human trafficking, murder, rape and other crimes.

6   Rather, they argue that this is not sufficient justification for the prostitution laws because those

7   independent crimes can be separately prosecuted and punished.  Opposition at 12; see Opening

8   Brief at 11-13.  Punishing a crime after the fact is a poor substitute for deterrence.  To take one

9   example, a rape victim's injuries and trauma are not erased when the rapist has been convicted

10  and sentenced to prison.  The State has a legitimate and compelling interest in preventing crime,

11  not just in punishing it.  *United States v. Salerno*, 481 U.S. 739, 748, 749-50 (1987). *Cf. Int'l Bhd.*

12  *of Elec. Workers, Local 1245 v. Skinner*, 914 F.2d 1454, 1459-60 (9th Cir. 1990) (agency did not

13  act arbitrarily and capriciously in requiring random drug testing of pipeline workers rather than

14  rely on post-accident testing, which is "essentially non-preventive, whereas a key aim of random

15  testing is deterrence.").

16         Similarly, sexually transmitted diseases are a public health issue that the State has an

17  interest in preventing.  Prostitution has a potential to spread sexually transmitted disease in a way

18  that other sexual conduct does not.  *See United States v. Carter*, 266 F.3d 1089 (9th Cir. 2001)

19  (prostitution involves a serious potential risk to the prostitute of contracting a sexually transmitted

20  disease).

21         Finally, Plaintiffs argue that the State's interest in deterring commodification of sex is code

22  for finding the practice of prostitution immoral, and that is prohibited under *Lawrence.*

23  Opposition at 12-13.  The Ninth Circuit, in a post-*Lawrence* decision, concluded otherwise, and

24  held that the state's "interest in preventing the commodification of sex is substantial." *Coyote*

25  *Publ'g, Inc. v. Miller*, 598 F.3d 592, 604 (9th Cir. 2010).

26

27

28

1

**CONCLUSION**

2     For reasons set forth in this brief and the Attorney General's opening brief, the Court

3  should dismiss the complaint without leave to amend.

4

Dated:  June 23, 2015                          Respectfully Submitted,

5
                                               KAMALA D. HARRIS
6                                              Attorney General of California
                                               TAMAR PACHTER
7                                              Supervising Deputy Attorney General

8                                              /s/ SHARON L. O'GRADY

9                                              SHARON L. O'GRADY
                                               Deputy Attorney General
10                                             *Attorneys for Defendant Kamala D. Harris*

11  SA2015102025
    20750637.doc
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply in Further Support of Motion to Dismiss (4:15-CV-01007-JSW)