IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EROTIC SERVICE PROVIDER LEGAL EDUCATION & RESEARCH PROJECT, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> GEORGE GASCON, ET AL., <br><br> Defendants. | No. C 15-01007 JSW <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Docket No. 21 |

Now before the Court is the motion to dismiss filed by Defendant Kamala D. Harris, in her official capacity as Attorney General of the State of California. This case, filed by Plaintiffs Erotic Service Provider Legal, Education & Research Project ("ESPLERP"), three former erotic service providers who wish to engage in sexual activity for hire in the district, and a disabled male who desires to procure the services of an erotic service provider in the privacy of his own residence, challenges the constitutionality of California Penal Code section 647(b) ("Section 647(b)"), which criminalizes the commercial exchange of sexual activity. Plaintiffs seek to have this Court strike down Section 647(b), and claim that the statute, on its face and as applied, violates their Fourteenth

1 Amendment rights to substantive due process, their First Amendment rights to free speech and
2 freedom of association, their substantive due process rights to earn a living, and violates analogous
3 provisions of the California Constitution.

4 Defendant moves to dismiss the complaint, without leave to amend, for failure to state a
5 claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).
6 Defendant claims that there is no fundamental right to engage in prostitution or to solicit prostitution
7 and claims that any relationship between the prostitute and the client is not expressive association
8 protected by the Constitution.

**BACKGROUND**

10 California first criminalized prostitution in 1872 by statute when it enacted Penal Code
11 section 647. The original provision defined "vagrants" to include "every lewd and dissolute person,
12 who lives in and about houses of ill-fame, and every common prostitute," and held such vagrants
13 subject to a $500 fine or imprisonment for a term not to exceed six months. (Request for Judicial
14 Notice ("RJN"), Ex. A.)[1] In 1961, this original vagrancy statute was repealed and replaced by the
15 provision that anyone who solicited or engaged in any act of prostitution would be found guilty of
16 disorderly conduct, a misdemeanor. (RJN, Ex. B.) The current version of the statute provides that
17 anyone who "solicits or who agrees to engage in or who engages in any act of prostitution," defined
18 as "any lewd act between persons for money or other consideration," is guilty of the misdemeanor of
19 disorderly conduct. Cal. Penal Code. § 647(b). Although the term "lewd" is not defined in the
20 statute, California courts have interpreted the term to mean the touching of the genitals, buttocks, or
21 female breast, for the purpose of sexual arousal or gratification. *See, e.g., People v. Freeman*, 46
22 Cal.3d 419, 424 (1988). Thus, anyone in California who, in exchange for money or other
23 consideration, engages in, agrees to engage in, or solicits a sexual act for the purpose of sexual
24 arousal or gratification of the client or the prostitute is guilty of a misdemeanor.

25 Plaintiffs challenge the constitutionality of the statute, both on its face and as applied,
26 criminalizing the commercial exchange of consensual, adult sexual activity. Plaintiffs seek a

---

28 [1] Defendant requests that the Court take judicial notice of former sections of the California Penal Code. These provisions are judicially noticeable pursuant to Federal Rule of Evidence 201 and the Court GRANTS the request.

2

declaration that the law is unconstitutional and seek permanent injunctive relief prohibiting its enforcement. Plaintiffs allege five claims.[2] In their first claim for relief, Plaintiffs allege that Section 647(b) "violates the right to substantive due process as guaranteed by the Fourteenth Amendment." (Complaint ¶ 35.) Plaintiffs allege that the "rights of adults to engage in consensual, private sexual activity (even for compensation) is a fundamental liberty interest . . . . deeply rooted in this nation's history and tradition and one that is implicit in the concept of ordered liberty." (*Id.* ¶ 36.) Therefore, Plaintiffs contend, their challenge to Section 647(b) must be subject to strict scrutiny. Plaintiffs allege there is "not even a legitimate governmental interest which could possibly justify California's prostitution laws. The government has no interest in regulating such activities so long as the activities occur in private amongst consenting adults in furtherance of their liberty interest in their own sexual behavior." (*Id.* ¶ 37.)

Plaintiffs' second claim for relief alleges violations of the First Amendment. Plaintiffs contend their right to freedom of speech is violated by Section 647(b), because the statute "makes pure speech a criminal activity. The statute also utilizes speech to make an otherwise lawful act (engaging in sexual activity in private or even agreeing to engage in sexual activity at some point in the future) a crime based solely on the speaker's message and the content of his or her speech." (*Id.* ¶ 44.)

In their third claim for relief, Plaintiffs allege that Section 647(b) violates liberty interests protected by the Fourteenth Amendment to the substantive due process right to earn a living. (*Id.* ¶ 51.) Plaintiffs allege in this claim for relief that the statute "severely infringes on the ability to earn a living though one's chosen livelihood or profession, it unconstitutionally burdens the right to follow any of the ordinary callings of life; to live and work where one will; and for that purpose to enter into all contracts which may be necessary and essential to carrying out those pursuits." (*Id.*)

In their remaining claim for relief, for violation of the First Amendment freedom of association, Plaintiffs allege that Section 647(b) "severely infringes on the rights to freedom of

---

[2] Plaintiffs do not contest the motion to dismiss their fifth claim for violations of the California Constitution under the Eleventh Amendment. (Reply at 15.) Accordingly, the fifth claim for relief is DISMISSED without leave to amend.

3

association . . . . [b]y prohibiting the commercial exchange of private sexual activity, many persons in the State of California, including Plaintiffs herein, are unable to enter into and maintain certain intimate and private relationships." (*Id.* ¶ 56.)

On May 15, 2015, Defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiffs cannot state a claim for constitutional violations resulting from the State's criminalization of prostitution. Defendant seeks dismissal of the complaint without leave to amend.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

## ANALYSIS

**A.     Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

4

As a general rule, "a district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

**B.     Plaintiffs' Substantive Due Process Claim to Right to Sexual Privacy is Dismissed.**

Plaintiffs' central claim is predicated upon the individual's right under the Fourteenth Amendment to engage in private, consensual intimate conduct without governmental intrusion. Defendant contends that there is no fundamental right protected by the Constitution or recognized by precedent to engage in prostitution or to solicit it.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In *Lawrence v. Texas*, the Supreme Court determined that the Due Process Clause protects the fundamental right to liberty:

> Liberty protects the persons from unwarranted government intrusions into a dwelling or other private places. In our tradition the State is not omnipresent in the home. And there are other spheres of our lives and existence, outside the home, where the State should not be a dominant presence. Freedom extends beyond spatial bounds. Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and *certain intimate conduct*.

539 U.S. 558, 562 (2003) (emphasis added).

Plaintiffs contend that the Supreme Court's decision in *Lawrence* fundamentally changes the definition and scope of the liberty interest individuals maintain under the Due Process Clause and requires the application of strict scrutiny in this matter. In *Lawrence*, the Court struck down a Texas law which prohibited two persons of the same sex from engaging in certain intimate sexual conduct, sodomy. *Id.* at 564-67. The Supreme Court reconsidered and overruled its previous decision in *Bowers v. Hardwick*. 478 U.S. 186, 190 (1986). In *Bowers*, the Court defined the issue as "whether the Federal Constitution confers a fundamental right upon homosexuals to engage in sodomy and

5

hence invalidates the laws of the many States that still make such conduct illegal and have done so for a very long time." *Id.* The Court in *Lawrence* recognized that the *Bowers* Court had failed "to appreciate the extent of the liberty at stake." 539 U.S. at 567. Rather than defining the liberty interest so narrowly as the right to engage in homosexual conduct, the Court recognized "an emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in matters pertaining to sex." *Id.* at 572. The Court reasoned, "[w]hen sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring." *Id*. at 567.

In overturning *Bowers*, the *Lawrence* Court, relying upon intervening Supreme Court authority, "reaffirmed the liberty interest protected by the Due Process Clause" and "again confirmed that our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing and education." *Lawrence*, 539 U.S. at 573-74. "In explaining the respect the Constitution demands for the autonomy of the person in making these choices," the Court stated:

> These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State.

*Id.* at 574 (quoting *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 851 (1992)). The Court's emphasis in defining the liberty interest focused on the choices relating to protected relationships in which the intimate conduct occurs, not solely on the contours of the intimate conduct itself.

The Court is not persuaded by Plaintiffs' contention that the Supreme Court has shifted the definition of the protected liberty interest to comprise merely sexual or intimate conduct, as opposed to the relationship in which the sexual or intimate conduct occurs. The Court similarly is not persuaded by Defendant's contention that the due process analysis here should be predicated exclusively upon an asserted fundamental right to commercial sex. Plaintiffs' assertion of a fundamental liberty interest in sex is too broad, and Defendant's assertion of a fundamental liberty

6

interest in commercial sex is too narrow. Rather, this case challenges particular intimate conduct within a specific context in that courts have deigned not to afford constitutional protection.

"In protecting 'certain kinds of highly personal relationships,' the Supreme Court has most often identified the source of protection as the due process clause of the fourteenth amendment." *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1192 (9th Cir. 1988) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984)). The Supreme Court has long recognized that the Constitution, because it "is designed to secure individual liberty, [] must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Roberts*, 468 U.S. at 618. Without precisely identifying which intimate relationships merit constitutional protection, the Supreme Court has noted that "certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs." *Id*. at 618-19. The relationships granted protection by the Fourteenth Amendment "are those that attend the creation and sustenance of a family" and similar "highly personal relationships." *Id.* at 619-620. "The individuals are deeply attached and committed to each other as a result of their having shared each other's thoughts, beliefs, and experiences. By the very nature of such relationships, one is involved in a relatively few intimate associations during his or her lifetime." *IDK*, 836 F.2d at 1193. The Supreme Court has held that the Constitution protects "those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (citing *Roberts*, 468 U.S. at 618). In the context of intimate relations, "[w]hen sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring." *Lawrence*, 539 U.S. at 567.

In order to determine whether any particular relationship merits the protection of the Due Process Clause, courts may consider factors such as "the group's size, its congeniality, its duration, the purposes for which it was formed, and the selectivity in choosing participants." *IDK*, 836 F.2d at 1193; *see also Roberts*, 468 U.S. at 620 (holding that constitutionally protected relationships "are

7

distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.").

The Ninth Circuit has determined that a couple comprised of an escort and a client

> possesses few, if any, of the aspects of an intimate association. It lasts for a short period and only as long as the client is willing to pay the fee. . . . While we may assume that the relationship between them is cordial and that they share conversation, companionship, and other activities of leisure, we do not believe that a day, an evening, or even a weekend is sufficient time to develop deep attachments or commitments. In fact, the relationship between a client and his or her paid companion may well be the antithesis of the highly personal bonds protected by the fourteenth amendment.

*IDK*, 836 F.2d at 1193. Similarly, here, the Court finds precedent dictates that the intimate association between a prostitute and client, while it may be consensual and cordial, has not merited the protection of the Due Process Clause of the Fourteenth Amendment. *See, e.g., Lawrence*, 539 U.S. at 578 (distinguishing its holding from application in the context of public conduct or prostitution); *Muth v. Frank*, 412 F.3d 808, 818 (7th Cir. 2005) (holding that, pursuant to *Lawrence*, there is no cognizable fundamental right to private consensual sexual conduct). Having defined the asserted right to constitutional protection within a particular relationship, and having found that the relationship has not historically been granted recognition as fundamental, the Court finds that Section 647(b) does not challenge a fundamental right requiring the application of strict scrutiny in assessing its constitutionality. *See Raich v. Gonzales*, 500 F.3d 850, 864-66 (2007); *see also Williams v. Morgan*, 478 F.3d 1316, 1320 (11th Cir. 2007). The Court follows a long precedent of recognizing unenumerated fundamental rights as protected by substantive due process. However, the Court is cautious not to extend constitutional protection to cover an asserted substantive due process right here as it would place "the matter outside the arena of public debate and legislative action" where it more properly resides. *See Raich*, 500 F.3d at 863 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

Because the Court finds there is no fundamental right at issue, it must apply rational basis scrutiny to the challenged statute. *See Romers v. Evans*, 517 U.S. 620, 631 (1996) ("[I]f the law neither burdens a fundamental right nor targets a suspect class, we will uphold the [law] so long as it bears a rational relation to some legitimate end."). Rational basis review is a highly deferential

standard that prescribes only the very outer limits of a legislature's power. *Id.* Courts "are compelled under rational-basis review to accept a legislature's generalizations even where there is an imperfect fit between means and ends." *Heller v. Doe*, 509 U.S. 312, 319-320 (1993) (internal citations omitted). Indeed, a court applying rational basis review may "go so far as to hypothesize about potential motivations of the legislature, in order to find a legitimate government interest sufficient to justify the challenged provision." *Gill v. Office of Personnel Management*, 699 F. Supp. 2d 374, 387 (D. Mass. 2010) (citing *Shaw v. Oregon Public Employees' Retirement Bd.*, 887 F.2d 947, 948-49 (9th Cir. 1989) (internal quotation omitted)).

However, rational basis review is not "toothless." *Mathews v. de Castro*, 429 U.S. 181, 185 (1976). Rather, it requires that the legislation not be enacted for arbitrary or improper purposes. In order for a law to be legitimate, it must be "properly cognizable" by the government asserting it and "relevant to interests" it "has the authority to implement." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 441 (1985). The law must bear a logical relationship to the purpose it purports to advance. *See Romer*, 517 U.S. at 632-33; *see also Gill*, 699 F. Supp. 2d at 387. Lastly, the justification for the law may not rely on factual assumptions that exceed the bounds of rational speculation. *Lewis v. Thompson*, 252 F.3d 567, 590 (2d Cir. 2001) (citing *Heller*, 509 U.S. at 320 (holding that speculation, while permissible, must still be "rational")).

Here, Defendant asserts that the statute survives scrutiny under the rational basis test because criminalizing prostitution is rationally related to numerous legitimate government interests. Those government interests include, for instance, preventing a climate conducive to violence against women and potential human trafficking, preserving the public health, and deterring the commodification of sex. *See, e.g., Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 600 (9th Cir. 2010) ("The federal government acknowledges the link between prostitution and trafficking in women and children, a form of modern day slavery."); *see also Love v. Superior Court*, 226 Cal. App. 3d 736, 742 (1990) (finding that the legislature "identified sexual contact as a primary means of transmitting the AIDS virus and 'prostitutes who pass on the infection to their clients' as a specific group of concern"); *United States v. Carter*, 266 F.3d 1089, 1091 (9th Cir. 2001) (citations omitted) (holding that "prostitution involved 'a serious potential risk' of contracting a sexually transmitted disease");

9

*see also Coyote*, 598 F.3d at 603 (holding that the state's interest in preventing commodification "may be motivated in part by concerns about the indirect consequences of permitting such sales, but they are also driven by an objection to their inherent commodifying tendencies – the buying and selling of things and activities integral to a robust concept of personhood."). This Court finds that, following the holding in *Lawrence*, moral disapproval is not an adequate or rational basis for criminalizing conduct. However, there are "justifications for criminalizing prostitution other than public morality, including promoting public safety and preventing injury and coercion." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 746 (5th Cir. 2008). Accordingly, the Court finds that Defendant has proffered sufficient legitimate government interests that provide a rational basis to justify the criminalization of prostitution in California.

**C.     Plaintiffs' Claims to Freedom of Speech and Association are Dismissed.**

Plaintiffs allege a claim for violation of their First Amendment rights to free speech on the basis that Section 647(b) makes the solicitation or the agreement to engage in prostitution a crime. (Compl. ¶ 43.) Accordingly, they contend that the statute makes "pure speech a criminal activity." (*Id.* ¶ 44.)

Plaintiffs further allege a claim for violation of their First Amendment rights to freedom of association on the basis that Section 647(b) severely infringes the rights of individuals to enter and maintain certain intimate or private relationships. (*Id.* ¶¶ 55-56.)

Both parties agree that Defendant's arguments regarding Plaintiffs' free speech and association claims under the First Amendment are premised entirely upon the threshold contention that the criminal statute banning prostitution violates constitutional principles. However, having found that Section 647(b) does not violate the Due Process Clause of the Constitution, the Court finds that there is no constitutional bar to banning commercial speech related to illegal activity. *See Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 563 (1980) (citing *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 388 (1973)) (holding that the government may ban commercial speech related to illegal activity).

Furthermore, as the Court has already held, the First Amendment's protection of freedom of association does not protect the relationships at stake in the context of prostitution. The

10

"Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships." *Rotary Club of Duarte*, 481 U.S. at 545. Because the Court has found that Section 647(b) does not impermissibly interfere with protected intimate relationships under the Fourteenth Amendment, the Court similarly finds that the statute does not violate Plaintiffs' associational rights under the First Amendment.

**D.    Plaintiffs' Substantive Due Process Claim to Right to Earn a Living is Dismissed.**

Plaintiffs' claim for violation of their substantive due process right to earn a living by the commercial exchange of sex is eviscerated by the Court's finding that Plaintiffs have not stated an actionable substantive due process claim related to the criminalization of prostitution. Plaintiffs cannot demonstrate that they maintain a liberty or property interest protected by the Constitution in this chosen, illegal profession. *See, e.g., Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) (holding that the liberty component of the Fourteenth Amendment includes some generalized due process right to choose one's field of private employment, but the right is nevertheless subject to reasonable government regulation). A protectable liberty interest in employment arises only "where not affirmatively restricted by reasonable laws or regulations of general application." *Blackburn v. City of Marshall*, 42 F.3d 925, 941 (5th Cir. 1995). This Court has found as a matter of law, that Plaintiffs have failed to demonstrate that they have a protectable liberty interest in the profession of prostitution. And the State's generalized regulation banning such a profession does not pose a due process problem. Accordingly, Plaintiffs have not demonstrated that, by virtue of the state's criminal statute, they have been deprived of a substantive due process right to earn the living of their choosing.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with leave to amend. Plaintiffs may file an amended complaint in accordance with the terms of this Order and consistent with their obligations under Rule 11 of the Federal Rules of Civil Procedure by no later than May 6, 2016. Defendants shall have 21 days thereafter to file their response, or answer the

///

///

operative complaint. If no amended complaint is filed by May 6, 2016, this case shall be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: March 31, 2016

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE